[Cite as *State v. Sheffey*, 2013-Ohio-2463.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 98944

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMES SHEFFEY

DEFENDANT-APPELLANT

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-560852

**BEFORE:** Boyle, P.J., Rocco, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** June 13, 2013

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street
Second Floor
Cleveland, Ohio   44114

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Maxwell M. Martin
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, James Sheffey, appeals his conviction and sentence, raising six assignments of error:

I. The trial court erred when it refused to accept appellant's *Alford* plea.

II. The trial court erred when it failed to merge allied offenses.

III. The trial court committed plain error in recording appellant's sentence in its journal entry as 14 years imprisonment.

IV. Appellant's conviction was against the manifest weight of the evidence.

V. Insufficient evidence supported appellant's convictions.

VI. The state committed prosecutorial misconduct by attacking the sincerity of defense counsel.

{¶2} Finding no merit to the appeal, we affirm.

Procedural History and Facts

{¶3} In January 2012, Sheffey was indicted on four counts of felonious assault, in violation of R.C. 2903.11(A)(2) (involving four different victims); one count of improperly discharging into habitation, in violation of R.C. 2923.161(A)(1); one count of having weapons under disability, in violation of R.C. 2923.13(A)(3); and one count of criminal damaging, in violation of R.C. 2909.06(A)(1). The felonious assault and improperly discharging into habitation counts each carried one- and three-year firearm specifications. They further carried a five-year specification for a "drive-by shooting."

The underlying allegations giving rise to the indictment were that Sheffey fired several bullets into a residence on 6th Avenue in East Cleveland after having a fight with the owner.

{¶4} Sheffey pleaded not guilty to the charges, waived his right to a jury trial on the having weapons under disability count, and proceeded to a jury trial on the remaining counts where the following evidence was presented.

{¶5} Dominique Hearn testified that she used to date and reside with Wilson Clark, the owner of the house located on 6th Avenue in East Cleveland. According to Hearn, on Saturday, July 23, 2011, around 8:00 p.m., she was hanging out on Wilson's front porch of the house on 6th Avenue, along with (1) Wilson, (2) Wilson's aunt, Leigh Clark, (3) Wilson's daughter, Somer, and (4) her own daughter, Jayden, when Sheffey pulled into the driveway, driving a silver Mazda. Hearn explained that she knew Sheffey because he lived down the street on 6th Avenue, and he had dated Leigh.

{¶6} Hearn further testified that Sheffey wanted Leigh to come down to see him but she was not interested. Wilson relayed the message to Sheffey, who then left. Ten minutes later, Sheffey returned, asking again to talk to Leigh. According to Hearn, Wilson ultimately told Sheffey to leave, resulting in the two "tussling" in the driveway, Wilson "knock[ing]" Sheffey out, and Sheffey falling in the driveway and "bust[ing] his head open." Sheffey got up, "stood there for a minute," got into his car, and "reversed sporadically" from the driveway, driving "out of control."

**{¶7}** According to Hearn, less than ten minutes later, Sheffey pulled up again in his car, driving "regular pace until he came to a halt in front of the porch when we saw the gun." Hearn testified that "[y]ou couldn't not see that gun. When we saw that gun we were like oh, my God. We tried to make it in the house. We barely made [it] in the foyer. That's when we heard the shots fired." Hearn explained that the "we" referred to herself, Leigh, and the two girls. Wilson was not at the house because he had left following the fight with Sheffey.

**{¶8}** Hearn further testified that she immediately called Wilson and told him what happened. On cross-examination, Hearn stated that she did not call the police immediately following the shooting; instead, she called only after she believed that Sheffey came back to burglarize the house later that same evening.

**{¶9}** The state next offered the testimony of Wilson, who corroborated much of what Hearn testified to but denied pushing or shoving Sheffey. Wilson testified that he and Sheffey "were going back and forth" and then Wilson's uncle stepped in. Wilson further testified that he then left but got a call about 20 minutes later, indicating that bullets had been fired at the house. Wilson ran back to the house, discovering that the front window was "busted" and there were "holes" in the wall. According to Wilson, Sheffey's brother, Donald, apologized to Wilson the next day for his brother's actions.

**{¶10}** East Cleveland patrolman, Todd Carroscia, testified that he responded to a call concerning several shots fired in the area of 6th Avenue. Officer Carroscia testified

that he first cleared the house, finding four individuals upstairs hiding in a closet. He observed bullet holes in the wall and part of the door jamb. One bullet was recovered, along with a piece of slug. Officer Carroscia further recovered a large brick "that appeared to have been thrown through the window." He photographed the area, including a pool of blood found outside the house. Officer Carroscia further took some swabs of the blood, which was later confirmed to match Sheffey's.

{¶11} East Cleveland detective, Michael Delisle, testified that he followed up with the investigation of the shooting. He testified that the Clarks' front porch was approximately 15 feet from the street and that one could "see directly onto the porch without obstruction" from the street. Det. Delisle testified that the police did not recover any gun or shell casings on the scene and that the one bullet recovered was "too smashed" to perform any forensics. He further stated that, after he interviewed Wilson and Hearn, he obtained an arrest warrant for Sheffey. Det. Delisle interviewed Sheffey in March 2012, which was videotaped and played at trial for the jury.

{¶12} In the interview, Sheffey initially indicated that he was unfamiliar with any shooting and that he was in Detroit at the time of the incident. After being told that the police recovered blood from the scene, Sheffey indicated that the blood was his. He ultimately admitted to driving his uncle's car to the Clarks' house and that he had drank heavily. He further stated that after the fight, he went to a friend's house. His friend,

however, has since died. He denied any shooting, emphasizing that he did not own a gun.

{¶13} Donald Cannon, Sheffey's brother, who was treated as a court's witness, testified that he heard a commotion at Wilson's house on the night of July 23, 2011, and then saw his brother lying in the street. According to Cannon, Sheffey was intoxicated that evening and had driven their uncle's gray Mazda over to the Clarks' house. Cannon testified, however, that his brother was not involved in any shooting. Cannon also testified that the next time that he saw his brother was in Detroit, Michigan for a funeral (months later) and that he had told Sheffey that the police were looking to speak with him. According to Cannon, Sheffey indicated that he was coming home to allow the police to question him but then never did.

{¶14} The jury found Sheffey guilty on all six counts presented to them. The trial court separately heard the having weapons under disability charge and found Sheffey guilty on that charge. The trial court sentenced Sheffey to a total of 14 years in prison.

## Guilty Plea

{¶15} In his first assignment of error, Sheffey argues that the trial court abused its discretion by refusing to accept his guilty plea after he declared his innocence. He contends that the trial court should have accepted his *Alford* plea and allowed him to plead guilty.

{¶16} We initially note that a defendant's plea of guilty while protesting innocence is commonly referred to as an *Alford* plea, originating from the United State's Supreme Court's decision in *North Carolina v. Alford*, 400 U.S. 25, 37-38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). A trial court may accept a guilty plea despite protestations of innocence when a factual basis for the guilty plea is evidenced by the record. *Id.*

{¶17} A criminal defendant, however, does not have an absolute right under the United States Constitution to have his guilty plea accepted by the court. *Id.* "Rather, the decision to accept or reject a guilty plea is within the sound discretion of the trial court." *State v. Switzer*, 8th Dist. No. 93533, 2010-Ohio-2473, ¶ 11. Accordingly, this court may not reverse a trial court's rejection of a plea agreement absent an abuse of discretion. *Id.*

{¶18} It is well settled, however, that a trial court abuses its discretion when it rejects a plea agreement by relying on a blanket policy rather than considering the facts and circumstances of the particular case. *See, e.g.*, *State v. Fitzgerald*, 188 Ohio App.3d 701, 2010-Ohio-3721, 936 N.E.2d 585 (8th Dist.); *Switzer*, *supra*; *State v. Raymond*, 10th Dist. No. 05AP-1043, 2006-Ohio-3259; *State v. Hunt*, 3d Dist. No. 1536, 1985 Ohio App. LEXIS 8937 (Oct. 22, 1985). Indeed, when a trial court merely relies on a blanket policy without any consideration of the specific circumstances of the case, "the trial court's refusal to accept appellant's plea [is] an abuse of discretion, or more precisely, it [is] a refusal to exercise the court's discretion." *Raymond* at ¶ 11.

**{¶19}** Relying on these cases, Sheffey contends that the trial court's refusal to accept his plea after he declared his innocence constitutes reversible error. He argues that the trial court failed to offer any reason for refusing his guilty plea and that it, therefore, implicitly had a blanket policy refusing *Alford* pleas. This argument, however, ignores the facts of the proceedings below.

**{¶20}** First, there is no evidence in the record that the trial court had a blanket policy prohibiting *Alford* pleas. Second, the record is not entirely clear that Sheffey ever intended on entering an *Alford* plea. Indeed, the record reflects that the trial court — on two separate occasions — engaged in the plea colloquy with Sheffey after he indicated a desire to accept the state's plea deal but that Sheffey ultimately changed his mind.

**{¶21}** The first time, in the midst of the trial court's colloquy, Sheffey stated the following: "I don't want to do it, man. I can't, man. I don't know, man, because this man — * * * I don't know, man. I can't do it. That's 11 years. I can't do that." The second time, the trial court agreed to a plea colloquy after Sheffey again indicated a desire to plead guilty following voir dire of the jury. This time, Sheffey stated for the first time that he was not guilty in response to his defense counsel's question. From the record, it appeared that Sheffey was once again having a change of heart and wasting the trial court's time. Notably, after Sheffey indicated that he was "not guilty," neither he nor his counsel indicated a desire to continue with the plea hearing.

**{¶22}** Accordingly, based on the facts and circumstances of this case, we cannot say that the trial court abused its discretion in proceeding to trial.

**{¶23}** The first assignment of error is overruled.

<u>Allied Offenses and Merger of Firearm Specifications</u>

**{¶24}** In his second assignment of error, Sheffey argues that the trial court "failed to properly apply Ohio's allied offense statute [R.C. 2941.25(A)] to all firearm specifications." He further contends that the trial court should have merged all the firearm specifications that stemmed from the drive-by shooting. We disagree.

**{¶25}** R.C. 2941.25(A) states: "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." Contrary to Sheffey's contention, however, R.C. 2941.25 is not applicable to firearm specifications because "a firearm specification is a penalty enhancement, not a criminal offense." *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, paragraph one of the syllabus.

**{¶26}** Although not subject to R.C. 2941.25, firearm specifications may be subject to merger under R.C. 2929.14. We review Sheffey's challenge of the trial court's imposition of multiple firearm specifications to determine whether it is contrary to law. *See* R.C. 2953.08. Applying that standard, we find that the trial court's imposition of the firearm specifications complies with R.C. 2929.14.

**{¶27}** Ordinarily, the court is forbidden from imposing sentence on multiple firearm specifications for "felonies committed as part of the same act or transaction." R.C 2929.14(B)(1)(b). However, this section applies only to the extent that R.C. 2929.14(B)(1)(g) does not apply, which states:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

**{¶28}** In this case, Sheffey was found guilty of committing two or more felonies. Four of those felonies were felonious assault, and he was found guilty of firearm specifications under R.C. 2929.14(B)(1)(a). Under R.C. 2929.14(B)(1)(g), the court was required to impose on Sheffey prison terms for the two most serious specifications stated in (B)(1)(a), and could also, in its discretion, impose sentence for any other specifications. *See State v. Cassano*, 8th Dist. No. 97228, 2012-Ohio-4047, ¶ 34; *State v. Worth*, 10th Dist. No. 10AP-1125, 2012-Ohio-666, ¶ 96; *State v. Beatty-Jones*, 2d Dist. No. 24245, 2011-Ohio-3719, ¶ 16; *see also State v. Isreal*, 12th Dist. No. CA2011-11-115, 2012-Ohio-4876, ¶ 73 (recognizing that R.C. 2929.14(B)(1)(g) "serves as an exception to

the rule that multiple firearm specifications must be merged for purposes of sentencing when the predicate offenses were committed as a single criminal transaction").

**{¶29}** Here, the trial court properly sentenced Sheffey on two of the three-year firearm specifications attached to the felonious assault counts as required under R.C. 2929.14(B)(1)(g). The trial court also properly imposed a five-year mandatory prison term pursuant to the firearm specification in R.C. 2941.146, also attached to the felonious assault counts. To the extent that the trial court did not merge the three- and five-year firearm specifications on one of the felonious assault counts, it was not required to do so. Indeed, under R.C. 2929.14(B)(1)(c), "if an offense is properly accompanied with a specification under R.C. 2941.146 and another under 2941.145, there is no merger of the specifications, and the court must impose a sentence for each." *State v. Coffman*, 10th Dist. No. 09AP727, 2010-Ohio-1995, ¶ 11; *see also State v. Walker*, 2d Dist. No. 17678, 2000 Ohio App. LEXIS 2952 (June 30, 2000).

**{¶30}** Further, contrary to Sheffey's assertion, the trial court only imposed a single five-year prison term for the firearm specification under R.C. 2941.146 (the "drive-by" shooting specification), thereby merging all of the other five-year specifications into the one. Because the trial court did not impose an additional five-year sentence on the drive-by specification attached to every felonious assault count, we find this case distinguishable from *State v. Philips*, 8th Dist. No. 96329, 2012-Ohio-473. Indeed, in this case, the trial court properly recognized that R.C. 2929.14(B)(1)(c) limited imposing

a single five-year sentence on the "drive-by" specification and that it must merge with the same firearm specification in other counts "for felonies committed as part of the same act or transaction."

{¶31} Accordingly, we cannot say that the trial court's imposition of 11 years on firearm specifications is contrary to law.

{¶32} The second assignment of error is overruled.

Journal Entry

{¶33} In his third assignment of error, Sheffey argues that the trial court committed plain error "in recording" his sentence as "14 years imprisonment." We disagree.

{¶34} According to Sheffey, the sentencing entry is confusing and ambiguous. He argues that the trial court's actual imposition of each count as stated in the journal entry should be construed as imposing only a six-year sentence. In support of his claim, he relies on the Twelfth District's decision in *Hamilton v. Adkins*, 10 Ohio App.3d 217, 461 N.E.2d 319 (12th Dist.1983), which recognized that ambiguities within a sentencing entry should be construed in the defendant's favor. Sheffey's reliance on *Adkins* in this case is misplaced.

{¶35} In *Adkins*, the trial court sentenced the defendant on three misdemeanor counts, imposing a $50 fine and 30 days on each charge. The trial court, however, never indicated at the time of sentencing or in its journal entry if the 30 days were to be served

concurrently or consecutively. *Id.* at 217. Adkins later appeared for a bond hearing after having filed a notice of appeal. At that time, the trial court clarified its earlier order, stating that the counts were to be served consecutively. On appeal, the court reversed the trial court's imposition of consecutive sentences, reasoning as follows:

> When the appellant was sentenced the trial court failed to explicitly impose consecutive sentences. By its vague and indefinite sentencing, the trial court provided considerable uncertainty as to the length of the sentence to be served by the appellant. Where there is an ambiguity in the language as to whether the sentences are to be served concurrently or consecutively, a defendant is entitled to have the language construed in his favor. *See Gaddis v. United States* (C.A. 6, 1960), 280 F.2d 334, 336. Since there was no specific designation that the sentences were to be served consecutively, R.C. 2929.41 requires that they be concurrent.

*Id.* at 218.

**{¶36}** This case is distinguishable from the instant case. Here, the imposition of the 14-year sentence in the trial court's journal entry is consistent with what the trial judge stated at sentencing. Sheffey's sentence of 14 years is based on the imposition of three years on the base felonious assault counts, two years on having weapons while under disability, and five months on the criminal damaging, all ordered to be served concurrently, and the imposition of a total of 11 years on the firearm specifications, all to be served consecutive to the underlying base counts. To the extent that Sheffey argues that the trial court failed to clearly specify that the firearm specifications run consecutively, R.C. 2929.14(C)(1)(a) mandates it. Thus, the ambiguity at issue in *Adkins* simply does not exist in this case.

**{¶37}** We find no error, plain or otherwise, in the trial court's sentencing journal entry.   The third assignment of error is overruled.

## Manifest Weight of the Evidence

**{¶38}** In his fourth assignment of error, Sheffey argues that his conviction is against the manifest weight of the evidence.   We disagree.

**{¶39}**  In *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, the Ohio Supreme Court explained the appropriate review of a claim challenging the manifest weight of the evidence as follows:

> The question to be answered * * * is whether "there is substantial evidence upon which a [trier of fact] could reasonably conclude that all the elements have been proved beyond a reasonable doubt." In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the [trier of fact] "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

(Citations omitted.)   *Id*. at ¶ 81.

**{¶40}** "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

**{¶41}** Sheffey argues that Hearn — the state's only witness who identified him — was not credible.   Specifically, he argues that Hearn's identification was not reliable

given the lighting conditions, the short duration of time to observe the shooter, and the existence of bushes obstructing her view. He further contends that Hearn's testimony that the shooter had a rifle was inconsistent with the police's belief that a revolver was most likely used.

{¶42} We find Sheffey's argument unpersuasive. All of these issues and inconsistencies were explored at trial for the jury to consider. And none of them, either on its own or cumulatively, are so great to render Hearn's testimony completely unreliable. Indeed, this is not a case involving a stranger identification — Hearn knew Sheffey. Further, according to Det. Delisle, there was a clear vantage point from the porch and street. Further, while Hearn may have been the only person identifying Sheffey as the shooter, the state presented significant circumstantial evidence tying Sheffey to the crimes. Notably, Sheffey's own admissions, as well as his brother's testimony, placed Sheffey at the scene. And they both established that he was driving the Mazda — the same Mazda identified by Hearn.

{¶43} Based on the evidence presented, we cannot say that this is the exceptional case where the jury clearly lost its way. The fourth assignment of error is overruled.

### Sufficiency of the Evidence

{¶44} In his fifth assignment of error, Sheffey argues that his conviction is not supported by sufficient evidence. Relying on the same arguments advanced in his fourth assignment of error, he contends that the state failed to present sufficient evidence to

support the convictions. Having already rejected this claim, we find no merit to Sheffey's argument. Here, we cannot say that Hearn's testimony was so unreliable to render it "insufficient as a matter of law."

{¶45} The fifth assignment of error is overruled.

<u>Prosecutorial Misconduct</u>

{¶46} In his final assignment of error, Sheffey argues that the prosecutor engaged in prosecutorial misconduct by attacking the sincerity of his defense counsel in closing argument. We find this argument to lack merit.

{¶47} The standard of review for prosecutorial misconduct is whether the comments and questions by the prosecution were improper, and, if so, whether they prejudiced appellant's substantial rights. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶48} Sheffey argues that the prosecutor's closing statement prejudiced him because it unfairly attacked his defense counsel's theory that Hearn did not have the

opportunity to see the shooter and implied that his defense counsel did not even believe him and was merely doing a "job." Specifically, Sheffey points to the following excerpt:

> All right. So it's really unreasonable to expect her to come in here and say well, the barrel was this long, the handle was brown in color or chrome in color. That's unreasonable. And Mr. Seewald's doing what a criminal defense attorney does; he's going to raise that as reasonable doubt. That's not anywhere near reasonable doubt, and I hope and think you will see through that.

{¶49} Although prosecutors are entitled to considerable latitude in opening and closing arguments, they must nevertheless avoid insinuations and assertions calculated to mislead. *Lott* at 166. "They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence." *Id.* The prosecutor is, however, permitted to fairly comment on the credibility of witnesses based on the witnesses' testimony at trial. *State v. Williams*, 8th Dist. No. 90739, 2012-Ohio-1741, ¶ 12, citing *State v. Price*, 60 Ohio St.2d 136, 140, 398 N.E.2d 772 (1979). Courts must review the statement within the context of the entire trial. *Id.*

{¶50} We cannot agree that the prosecutor's comments rise to prosecutorial misconduct. Indeed, a prosecutor's comments should not be taken out of context and given their most damaging meaning. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996). Notably, Sheffey's defense counsel did not object to these comments. But even if these comments were construed as inappropriate, we cannot say that it denied Sheffey of a fair trial. Here, the trial court specifically instructed the jury that opening

statements and closing arguments of counsel were not evidence, and that the jury was to decide the case solely on the evidence presented. We have no basis to conclude that the jury did not follow this instruction.

{¶51} The final assignment of error is overruled.

{¶52} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

KENNETH A. ROCCO, J., and
MARY EILEEN KILBANE, J., CONCUR