[Cite as *State v. James*, 2015-Ohio-4987.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102604**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## BYRON JAMES

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-566251-A

**BEFORE:** Stewart, J., E.T. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** December 3, 2015

**ATTORNEY FOR APPELLANT**

P. Andrew Baker
17877 St. Clair Avenue, Suite 150
Cleveland, OH 44110


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

Anna M. Faraglia
Oscar E. Albores
Assistant County Prosecutors
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, J.:

{¶1} Defendant-appellant Byron James repeatedly shot his victim in front of a group of people after chasing the victim around a neighborhood — he did not even bother to hide his identity from the group of people, all of whom knew him. A jury found these facts sufficient to find James guilty of aggravated murder, two counts of felonious assault, discharging a weapon near prohibited premises and into a habitation, along with firearm specifications for those respective counts. In this direct appeal of his conviction, James argues that trial counsel was ineffective for failing to seek a dismissal of the charges on speedy trial grounds and for failing to object to certain trial testimony, that his conviction was against the manifest weight of the evidence, that counts for discharging a weapon near prohibited premises and discharging a weapon into a habitation should have merged for sentencing, and that the court erred by concluding that the discharge specifications were subject to mandatory consecutive service. We affirm in part, reverse in part, and remand.

{¶2} James's first assignment of error complains that defense counsel was ineffective for three reasons: (1) trial counsel failed to seek a dismissal of the indictment on speedy trial grounds; (2) trial counsel failed to object when the state improperly bolstered the credibility of its witnesses; and (3) trial counsel failed to request merger of the firearm discharge specifications.

{¶3} A defendant claiming ineffective assistance of counsel bears the burden of establishing two elements: (1) that trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶4} To satisfy the first element of the *Strickland* test, appellant must direct the court to specific acts or omissions by his counsel. *Id*. at 690. We consider whether in light of all the circumstances counsel's performance was outside the wide range of professionally competent assistance. *Id*. Our assessment of counsel's performance is "highly deferential" so we indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Id*. at 689. Further, counsel's performance is evaluated in light of an attorney's discretion to develop appropriate trial strategies according to the attorney's independent judgment, given the facts of the case, at least some of which may not be reflected in the trial record. *Id*. at 689-690.

{¶5} To satisfy the second *Strickland* element, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. A "reasonable probability" is defined as one that is "sufficient to undermine confidence in an outcome." *Id*. at 694.

{¶6} Trial counsel did not perform outside the wide range of professionally competent assistance required in the context of speedy trial issues.

{¶7} Although the state is required to bring a criminal defendant to trial within 270 days after arrest, *see* R.C. 2945.71(C), James was held in jail in lieu of bail, so the triple-count provisions of R.C. 2945.71(E) applied. This means that the state had to bring James to trial within 90 days of his arrest. James was arrested on December 9, 2013, so his trial should have started no later than March 10, 2014. Trial did not commence until January 26, 2015, well outside the 90-day speedy trial time.

{¶8} The speedy trial time can be tolled on the accused's own motion. *See* R.C. 2945.72(E). James concedes that the speedy trial time was tolled many times at his request, but claims that one continuance ordered by the court did not come at his request and is dispositive of the speedy trial issue. That continuance, granted on October 15, 2014, stated: "Pretrial not held. Defense counsel in trial in another courtroom. Final pretrial set at 10/29/14 at 9:00 AM. Trial set at 1/26/15 at 9:00 AM." James argues that this entry does not indicate that the trial date was set at his request, nor does it indicate that he agreed to waive his speedy trial time from October 15, 2014 through January 26, 2015.

{¶9} While James may not have specifically acquiesced to the January 26, 2015 trial date, a defendant is bound by the actions of counsel in waiving speedy trial rights by seeking or agreeing to a continuance, even if no formal motion for a continuance has been filed. *See State v. Davis*, 46 Ohio St.2d 444, 449, 349 N.E.2d 315 (1976). There is no question that trial counsel's inability to attend the October 15, 2014 pretrial necessitated a delay chargeable to James that tolled the speedy trial time. *See, e.g.*, *State v. Humphries*, 8th Dist. Cuyahoga No. 99924, 2014-Ohio-5423, ¶ 9 (continuances of pretrials granted at defendant's request tolled speedy trial time); *State v. Walker*, 8th Dist. Cuyahoga No. 99239, 2013-Ohio-3522, ¶ 22. The court rescheduled the pretrial for October 29, 2014, but that pretrial was continued "at the request of defendant" for "further discussions" — a notation that, given prior references to "ongoing plea negotiations," we understand as indicating that the parties were engaged in plea negotiations. Likewise, pretrials scheduled for November and December were continued at James's request, with the court noting the reason for the continuances as "further discussions." So even though James may have not agreed to the January 2015 trial date, counsel, on his behalf, did request additional continuances that tolled the speedy trial time regardless of that trial date.[1] With no speedy trial issue manifest on the record, trial counsel had no duty to file a motion to dismiss on that basis.

---

[1] There was one continuance of the "final" pretrial requested by the state on November 17, 2014, causing the court to reschedule the pretrial to November 20, 2014, at which time James asked for another continuance. James makes no argument that this three-day delay occasioned by the state's request, standing alone, was what violated his speedy trial right.

**{¶10}** James next argues that trial counsel failed to object on numerous occasions where the state improperly bolstered the credibility of its own witnesses by inquiring into whether they were currently employed or had children. He argues that these questions violated Evid.R. 608(A)(2), which states that "evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."

**{¶11}** It is important to understand that the "evidence of truthful character" referred to in Evid.R. 608(A)(2) is not the same thing as "credibility." "Truthfulness" is a facet of "credibility." *State v. Markland*, 8th Dist. Cuyahoga No. 45137, 1983 Ohio App. LEXIS 13748 (Apr. 21, 1983). The Staff Note to Evid.R. 608(A)(2) makes this point, noting that a 1992 amendment to the rule "substitutes the phrase 'character for truthfulness' for the term 'credibility.' The latter term is too broad and, therefore, may cause confusion."

{¶12} None of the questions posed by the state remotely touched on Evid.R. 608(A)(2) and the witness's character for truthfulness. They were general background questions asked of the witnesses as they began their testimony: their age, where they lived, whether they had a family, and their employment status. Although these kinds of questions may indirectly give the trier of fact reason to find the witness more or less credible, this is not the type of testimony prohibited by Evid.R. 608(A)(2). What is more, James himself testified and answered very similar questions on direct examination regarding whether he graduated from high school, whether he was employed, and whether he had any children. James cannot be heard to complain that trial counsel was deficient for failing to object to the same type of trial strategy.

{¶13} James also complains that the state improperly asked its own witnesses whether they had any prior convictions. The state is entitled to ask its own witnesses whether they have any prior convictions as a preemptive attempt to "take the wind out of the defendant's sails regarding the witness' credibility." *United States v. Handly*, 591 F.2d 1125, 1128, fn. 1 (5th Cir.1979); *see also Ohler v. United States*, 529 U.S. 753, 758, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000) (noting that defendants often introduce evidence of prior convictions on direct examination to "remove the sting"). While one of the state's witnesses did not have a prior conviction, that fact alone did not make the question objectionable on the grounds that the answer bolstered that witness's truthful character. Counsel therefore had no reason to object to the state's questions.

**{¶14}** For his second assignment of error, James complains that the jury's verdict is against the manifest weight of the evidence. He argues that there was no physical evidence to prove his identity as the shooter and that the state's witnesses had credibility issues.

**{¶15}** The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986). The use of the word "manifest" means that the trier-of-fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶16} The state's evidence consisted of the testimony of several witnesses who collectively testified that the victim and a group of his friends had gathered in front of a house when James pulled up in his car. James, who was not wearing anything that might hide his identity, exited the car in the plain sight of those present. He said something to the victim that the witnesses could not hear. He then pulled out a handgun and began firing. The victim fled, moving between parked cars on the street. James pursued the victim, continuing to fire between three to seven shots. One of those gunshots struck the victim in the back and caused his death. In addition to the shot that killed the victim, one of the shots fired by James struck a house on the street. After killing the victim, James reentered his car and drove away. James subsequently sold the car for $80 and then traveled to Georgia. He remained there for nearly one year despite knowing that he was wanted for the murder, until his arrest and return to Cuyahoga County.

{¶17} James testified in his own defense and claimed that two witnesses to the shooting fabricated his involvement based on "differences" they had. He testified that one of the witnesses was upset because he had been talking to the witness's "girl"; he testified that the other witness was "trying to be tough all the time." James claimed that these two witnesses had broken the front and rear windows of his car. He claimed that he left Ohio after the shooting to attend a funeral. After learning that the police had issued a warrant for his arrest, James said that he decided to "chill out" in Georgia until his family was able to finance the services of an attorney.

{¶18} James also attacks the credibility of the witnesses, arguing that they did not identify him as the shooter in their 911 call for emergency services despite later claiming to know who he was when the shooting occurred. One witness explained that he did not immediately identify James based on the "code of the streets" not to "snitch." The witness said that at the time he made the 911 call, he believed that the victim was "okay," but when he learned that the victim had died, he decided to come forward and identify James.

{¶19} Another witness testified that he was walking down the street at the time James drove by in his car. This witness, who had known James since they were children, said hello to James and kept walking. He then heard, but did not see, shots being fired. The witness ran for cover and saw the victim on the ground. He acknowledged that he did not immediately identify James by name to the police because he did not actually see the shooting.

{¶20} A fourth witness, whom James claims "did absolutely nothing to contact the police or report what he had witnessed" testified that after witnessing the shooting, he asked his mother to call the police as he went out to attend to the victim. This witness went to the hospital to await the victim's treatment and stayed there for two hours before returning to his home. He spoke to the police the following day and identified James as the shooter.

{¶21} Finally, James acknowledged that another witness immediately identified him as the shooter to the police, but claimed that this witness was a convicted felon who gave such sarcastic and flippant testimony that nothing he said was worthy of belief. While this witness may not have been as decorous as James would wish him to be, the witness's testimony was consistent in all material respects with that given by the other witnesses to the shooting. We have no basis to conclude that the jury lost its way by finding the state's witnesses believable.

{¶22} James also complains that the jury's guilty verdict on the count relating to discharging into a habitation was against the manifest weight of the evidence because there was no evidence to show that he knowingly fired a shot into the residence. This is really an argument going to the sufficiency, not the weight, of the evidence. And because the sufficiency of the evidence has not been assigned as error on this issue, it is not properly before us for review.[2]   *See* App.R. 16(A)(7).

---

[2] However, even had the argument been properly presented, it would be meritless: there was testimony from the occupant of the house concerning a bullet hole in the house that did not exist prior to the shooting and another witness testified that one of James's missed shots left a bullet hole in the side of the house. That evidence was sufficient to establish that James discharged a firearm into a habitation.

**{¶23}** The third assignment of error complains that the court erred by failing to merge Counts 5 and 6 — discharging a firearm on or near prohibited premises and discharging into a habitation — into the other four counts, all of which the court had otherwise merged for sentencing. James acknowledges that trial counsel conceded that Counts 5 and 6 were not allied, but argues that trial counsel was wrong to make that concession and that plain error exists.

**{¶24}** Ordinarily, the issue raised in this assignment of error would not be subject to review on appeal under authority of R.C. 2953.08(D)(1). That section states: "A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." Because trial counsel agreed with the state that Counts 5 and 6 do not merge, R.C. 2953.08(D)(1) would seem to deprive this court of jurisdiction to consider this issue.

**{¶25}** However, in *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, paragraph one of the syllabus states: "When a sentence is imposed for multiple convictions on offenses that are allied offenses of similar import in violation of R.C. 2941.25(A), R.C. 2953.08(D)(1) does not bar appellate review of that sentence even though it was jointly recommended by the parties and imposed by the court." The Supreme Court reached this conclusion by finding that the term "authorized by law" as used in R.C. 2953.08(D)(1) encompassed not only what the law permits, but what the law requires. *Id*. at ¶ 20. As applicable here, the allied offenses statute, R.C. 2941.25(A), states that "there may be only *one conviction* for allied offenses of similar import." *Id*. at ¶ 26 (Emphasis sic.). The Supreme Court interpreted this language to mean that "a trial court is prohibited from imposing individual sentences for counts that constitute allied offenses of similar import." *Id*.

**{¶26}** Nevertheless, *Underwood* understood that a defendant can expressly waive the protections of R.C. 2945.21 by "stipulating in the plea agreement that the offenses were committed with separate animus." *Id*. at ¶ 29. In this context, a defendant's waiver of statutory protection (the intentional relinquishment of a known right) is substantively different than a forfeiture (the failure to timely assert a right) of an issue for appeal. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 20.

{¶27} In *Underwood*, the parties entered into a plea agreement with an agreed sentence, but they said nothing about whether the offenses that were the subject of the plea agreement would merge. In this case, there was no plea agreement, but at sentencing the state told the court that it did not believe that Counts 5 and 6 merged for sentencing and trial counsel agreed, stating that "Count [sic] 5 and 6 do not merge into the first four counts * * *." Tr. 945-946. This statement by trial counsel was enough to constitute a waiver of R.C. 2941.25 and distinguish this case from *Underwood*.

{¶28} Under similar circumstances, some appellate courts have invoked the invited error doctrine in light of trial counsel's agreement that offenses do not merge for sentencing. "Invited" error is a doctrine that prevents a party from benefitting from an action that the party induced the court to make. *State v. Smith*, 148 Ohio App.3d 274, 2002-Ohio-3114, 772 N.E.2d 1225, ¶ 30 (8th Dist.). In *State v. Gardner*, 7th Dist. Mahoning No. 10 MA 52, 2011-Ohio-2644, the court found on very similar facts to those in this case that a representation by defense counsel at sentencing that counts do not merge for sentencing constituted "invited error." *Id*. at ¶ 36. Similarly, in *State v. Oehler*, 6th Dist. Williams No. WM-11-001, 2011-Ohio-6501, the court held that defense counsel's agreement to the state's representation that two counts of an indictment were not allied offenses and would not merge for sentencing was invited error. *Id.* at ¶ 11-12. We agree with these courts and conclude that James cannot take advantage of any error that trial counsel may have made by agreeing that Counts 5 and 6 do not merge for sentencing.

**{¶29}** Despite trial counsel having invited error with respect to the court's failure to merge Counts 5 and 6 for sentencing, James has a viable claim of ineffective assistance based on trial counsel inviting the error. We have in prior cases held that an ineffective assistance of counsel claim would not lie when a claimed error had been invited because "[t]here is no point in having a stringent invited error doctrine only to allow it to be overcome by finding counsel ineffective for having invited the error." *State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶ 9. *See also State v. West*, 8th Dist. Cuyahoga Nos. 97391 and 97900, 2013-Ohio-96, ¶ 27; *State v. Benitez*, 8th Dist. Cuyahoga No. 98930, 2013-Ohio-2334, ¶ 35. We applied this rule, however, because the claimed error had been the result of trial counsel's exercise of trial strategy. For example, in *Doss*, trial counsel informed the court that his client would waive a *Bruton*[3] issue; in *West*, trial counsel did not request separate trials for the defendant and his codefendant brother. In this case, there is no colorable trial strategy that would have James serve a longer sentence than he might otherwise serve had trial counsel not conceded the allied offenses issue. So we refuse to apply the rule that the invited error doctrine forbids consideration of ineffective assistance of counsel claims based on the invited error doctrine because there is no colorable trial strategy that would support the invited error.

---

[3] In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that in a joint trial of two defendants, a confession of one codefendant who did not testify could not be admitted into evidence, even with a limiting instruction that the confession could only be used against the confessing defendant.

**{¶30}** The issue, then, is whether trial counsel was ineffective for agreeing that discharging a firearm upon or over a public road or highway should not merge with the offense of improperly discharging a firearm into an occupied structure that is a permanent or temporary habitation. James could not be sentenced separately for each offense under R.C. 2941.25(A) if these were allied offenses of similar import.

**{¶31}** In *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, the Supreme Court held that "allied offenses are not offenses of similar import if the offender's conduct constitutes offenses against different victims or if the harm that results from each offense is separate and identifiable." *Id*. at ¶ 4. This conclusion followed from its decision in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, where the court stated, "when the defendant's conduct put more than one individual at risk, that conduct could support multiple convictions because the offenses were of dissimilar import." *Id*. at ¶ 23. In other words, offenses are of dissimilar import when they "constitute offenses involving separate victims." *Id*. at ¶ 26.

**{¶32}** Count 6, improperly discharging into a habitation in violation of R.C. 2923.161(A)(1), charged James with knowingly discharging a firearm into an occupied structure that was the permanent or temporary habitation of its resident. There was a stated victim for Count 6, that being the person who was inhabiting the house that had been struck by a gunshot that James fired.

{¶33} Count 5, discharging a firearm on or near prohibited premises, was brought under R.C. 2923.162(A)(3) and charged James with discharging a firearm over a public road. As defined, R.C. 2923.162(A)(3) does not contain a culpable mental element: "No person shall do any of the following * * * [d]ischarge a firearm upon or over a public road or highway." When a statute does not specify a degree of culpability and does not plainly indicate a purpose to impose strict liability, the culpable mental state is "recklessness." *See* R.C. 2901.21(B). Even though a statute may not contain a "plain" indication of an intent to impose strict liability, the intention to impose strict liability can be inferred from the purpose of the statute; for example, when "the acts are made unlawful for the good of the public welfare regardless of the [offender's] state of mind." *State v. Schlosser*, 79 Ohio St.3d 329, 333, 681 N.E.2d 911 (1997). Unlike some strict liability offenses where there is a specific victim (for example, statutory rape), the victim of the offense of discharging a firearm upon or over a public road or highway is the public. This is because it is the act itself that is prohibited. The offense can be completed with no one remotely near the location where the firearm is discharged upon or over the public road or highway. R.C. 2923.162(A)(3) is a statute intended to benefit the public good and thus imposes strict liability. Our conclusion is consistent with the Comment to Ohio Jury Instruction 523.162: "The Committee believes that R.C. 2923.162 imposes strict liability." The Ohio Jury Instructions are not authoritative, but are "helpful" as a "generally accepted interpretation" of a statute. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 97. Consistent with the model jury

instruction, the court charged the jury, with no objection from James, that the offense of discharging a firearm over a public road or highway is a strict liability offense.

{¶34} Because the offense of discharging a firearm over a public road or highway is a strict liability offense, the public was the victim for that offense. The victim of the offense of discharging a firearm into a habitation was the person occupying the house struck by the bullet. We thus find that there were separate victims for each offense, so the counts would not merge for sentencing. On that basis, trial counsel's concession that the two counts do not merge did not amount to ineffective assistance of counsel.

{¶35} Even if there were not separate victims of the two offenses, we agree with the court's finding that the offenses were committed with a separate animus and were not allied. *See Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at paragraph three of the syllabus.

{¶36} "[I]t is a question of fact whether a separate animus has been established or whether the offenses have been committed separately." *State v. Kohr*, 5th Dist. Licking No. 2008 CA 00147, 2009-Ohio-5297, ¶ 41, citing *State v. Hunt*, 9th Dist. Summit No. 10632, 1982 Ohio App. LEXIS 14455 (Nov. 24, 1982). As with any other question of fact, we defer to the findings of the trier of fact, but review the court's application of the law to those facts de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 26.

{¶37} The evidence showed that James fired four to seven shots, and only two of those shots were accounted for: the shot that killed the victim and the shot that lodged in a house. The house that had been fired upon was located on a corner of two streets. James drove up in front this house, exited his vehicle, said something to the victim, and then fired his gun. James missed and the victim ran down the street with James in pursuit, continuing to fire his gun. The rational conclusion is that the missed shot, fired when James was in front of the house facing the group who had been gathered in front the house, was the one that struck the house. As James pursued the victim, he continued to fire. The victim was found more than one block away, on another street, having been shot in the back.

{¶38} With witnesses testifying that they heard as few as three and as many as seven shots fired, the court could easily have concluded that some of those missed shots would have crossed the public road. This was not a situation where James fired a successive volley of shots, but one where the gunshots were separated by time in the course of his pursuing the victim. It follows that the offenses of discharging a firearm into a habitation and discharging a firearm over a public roadway were separate acts that did not merge for sentencing. Trial counsel's acknowledgment of this fact did not constitute ineffective assistance of counsel.

{¶39} The court ordered James to serve a total sentence of life with parole eligibility after 39 years. The primary sentence was a term of life in prison with parole eligibility after 30 years on Count 1. Counts 2-4 were merged into Count 1. The court ordered James to serve three years on Counts 5 and 6, but ordered those counts to be served concurrent and concurrent to the life term in Count 1. Each count of the indictment carried one- and three-year firearm specifications, and the court merged the one-year firearm specification for each count into the corresponding three-year firearm specification. The court merged the specifications for Counts 2-4 into the specification for Count 1, but refused to merge the three-year firearm specifications for Counts 5 and 6. Instead, it ran the firearm specifications for Counts 5 and 6 consecutive to each other, and in turn ran those specifications consecutive to the firearm specification on the aggravated murder charge in Count 1. James argues that the court not only should have merged the firearm specifications for Counts 5 and 6, but that the merged firearm specifications should have been merged into the firearm specification for the aggravated murder count. We disagree.

{¶40} "Ordinarily, the court is forbidden from imposing sentence on multiple firearm specifications for 'felonies committed as part of the same act or transaction.'" *State v. Cassano*, 8th Dist. Cuyahoga No. 97229, 2012-Ohio-4047, ¶ 33, quoting former R.C. 2929.14(D)(1)(b) (now R.C. 2929.14(B)(1)(b)). However, R.C. 2929.14(B)(1)(g) states:

If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

{¶41} We have construed R.C. 2929.14(B)(1)(g) to mean that in cases like this, where James was found guilty of three or more felonies, one of which was aggravated murder, and those felony counts contained firearm specifications, the trial judge is required to impose prison terms for the two most serious specifications, and could also, in its discretion, impose a sentence for any other specification. *Id*. at ¶ 34; *State v. Sheffey*, 8th Dist. Cuyahoga No. 98944, 2013-Ohio-2463, ¶ 28.

{¶42} James next argues that the court mistakenly believed that it was required to run all three firearm specifications consecutively when, in fact, R.C. 2929.14(B)(1)(g) requires only that two specifications be run consecutively and that the court has the discretion to run any other firearm specifications consecutively.

**{¶43}** The trial transcript supports James's argument on this point. The court stated: "The gun specifications, I believe by law, pursuant to the memorandums and the law cited therein, will have to — the three year gun specifications will have to run consecutive to each other and consecutive to the three year firearm specification now under sentence in Count 1." By indicating that all three firearm specifications would "have to" run consecutively, the court showed its mistaken belief that consecutive service of all three firearm specifications was compulsory.

**{¶44}** The state makes no direct attempt to counter James's argument that the court believed it to be required to order consecutive service on the firearm specifications apart from suggesting that the court could have ordered consecutive service on the third firearm specification "for public safety reasons." This is nothing more than an argument that the court exercised its discretion to order consecutive service of the third firearm specification. There can be no exercise of sentencing discretion when the court so plainly indicates its belief that it is compelled by statute to impose consecutive sentences. We agree with James that the court erred by indicating that it had to order consecutive service on the third firearm specification (Count 6). We remand this part of James's sentence for resentencing.

**{¶45}** James's final argument is that to the extent that the court has discretion to order consecutive service of the third firearm specification, it was required to comply with R.C. 2929.14(C)(4) and make the findings required under that statute before ordering consecutive service.

**{¶46}** We have held that the mandatory requirement to order consecutive service of certain specifications under R.C. 2929.14(B)(1)(g) supersedes the findings required by R.C. 2929.14(C)(4). *See State v. Young*, 8th Dist. Cuyahoga No. 102202, 2015-Ohio-2862, ¶ 10. We have not, however, specifically addressed whether the discretionary decision to order consecutive service of a third specification should be similarly treated. There are several appellate decisions addressing whether the court abused its discretion by ordering consecutive service of a third specification under R.C. 2929.14(B)(1)(g), but none of them consider whether the sentencing judge had to make the findings required by R.C. 2929.14(C)(4). *See, e.g.*, *State v. Vanderhorst*, 8th Dist. Cuyahoga No. 97242, 2013-Ohio-1785; *State v. Fortune*, 11th Dist. Lake No. 2014-L-117, 2015-Ohio-4019; *State v. Isreal*, 12th Dist. Warren No. CA2011-11-115, 2012-Ohio-4876.

**{¶47}** The consecutive sentencing statute applies to "multiple prison terms [that] are imposed on an offender for convictions of multiple *offenses*[.]" (Emphasis added.) R.C. 2929.14(C)(4). A specification is a sentencing enhancement, not a separate criminal offense, *State v. Ford*, 128 Ohio St.3d 398, 2011-Ohio-765, 945 N.E.2d 498, ¶ 16. By its own terms, R.C. 2929.14(C)(4) does not apply to penalty enhancing specifications. R.C. 2929.14(B)(1)(g) specifically applies to penalty enhancing specifications, so this statute controls. With there being no requirement in R.C. 2929.14(B)(1)(g) for the court to make findings of any kind before ordering a third penalty enhancing specification to be served consecutively, the court had no obligation to make any findings.

**{¶48}** Judgment affirmed in part; reversed in part; and remanded.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

EILEEN T. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR