JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, John Jackson, appeals his convictions for felonious assault. For the reasons that follow, we affirm.
 {¶ 2} Appellant was indicted by a Cuyahoga County Grand Jury on two counts of felonious assault (count one, knowingly cause serious physical harm, with a peace officer specification; count two, knowingly cause or attempt to cause physical harm by means of a deadly weapon or dangerous ordnance, specifically, an automobile, with a peace officer specification), attempted murder, resisting arrest and vandalism.
 {¶ 3} The case proceeded to a jury trial. At the conclusion of the State's case, appellant made a Crim.R. 29 motion for acquittal. The court granted the motion as to the vandalism count, but denied it as to the remaining counts. Appellant then presented testimony. At the conclusion of his case, he renewed his Crim.R. 29 motion for acquittal, which was denied. The jury found appellant guilty of counts one and two, felonious assault, guilty of count four, resisting arrest, and not guilty of count three, attempted murder. Appellant was sentenced to a five-year prison term.
 {¶ 4} At trial, the victim, Officer John Browning, testified that he and his partner, Officer Francis Santell, were at the Marathon gas station located at East 55th Street and Woodland Avenue in the early morning hours of the day of the incident. The officers frequently responded to that Marathon station upon complaints of *Page 4 
various criminal activity. On the day in question, as Officer Browning was in the police cruiser writing a ticket, Officer Santell heard loud music and went to investigate. Santell found appellant in a car with loud music and an open container of beer and brought him to the police cruiser. Santell asked appellant to sit in the back of the cruiser while he issued him citations. Appellant was noncompliant at first, but eventually got in the cruiser. The officers, with appellant in the cruiser, drove to appellant's car to retrieve the open container. After they gave appellant his citations, he was released.
 {¶ 5} The officers remained in their patrol car at the back of the gas station completing paperwork. Approximately ten minutes later, appellant approached the patrol car and knocked on Officer Santell's window. The officers ignored him and appellant walked away from the car and picked up the previously issued citations, which he had apparently thrown on the ground.
 {¶ 6} After completing their paperwork, the officers drove around to the front of the gas station and were issuing a ticket to another person when appellant's vehicle entered the parking lot from the street with "music blaring." The officers decided to arrest appellant. They pulled their cruiser in front of appellant's car and approached on foot. Officer Browning explained that he motioned for appellant to open the door, but appellant was "playing with [him] like he didn't hear what [he] said or he couldn't understand." After he asked appellant several times to open the door, *Page 5 
and appellant ignored him, Browning opened the door in an attempt to remove him from the vehicle.
 {¶ 7} Browning testified that as soon as he reached into appellant's vehicle, appellant shifted his car from park to reverse and accelerated at a high rate of speed. Browning explained that he was trapped between the door and the frame of the car and was dragged approximately 200 feet. The officer testified that he was released from the car when appellant slammed on the brakes, throwing him approximately another 30 feet. Appellant then drove away, but was later apprehended. The majority of the incident was captured on the gas station's surveillance video and shown to the jury. Santell, Browning's partner, corroborated Browning's testimony.
 {¶ 8} Browning was transported by EMS to the hospital for treatment. One of the technicians who responded to the scene described Browning's uniform as worn through to the skin at the elbows and knees, and that the pockets of his shirt were torn off. The technician testified that Browning was covered in mud and had gravel throughout his wounds, which she described as "road rash." Photographs taken at the hospital depicted scrapes and gravel burns to Browning's head, side, arms and hands. He was discharged approximately three hours later with a prescription for pain medication. The next day, while at home, however, Browning passed out and was taken back to the hospital, where he stayed for two-and-a-half days. Browning testified that, even six months after the incident, he still suffered from discomfort in *Page 6 
his leg, lower back and neck. He further testified that he missed approximately two months of work as a result of the injuries he sustained during the incident.
 {¶ 9} Appellant testified that after receiving the citations from the officers, he was socializing at the front of the gas station, when the officers pulled around to where he was and immediately activated their overhead lights. He testified that he got in his car, turned on the ignition and attempted to leave, but was cut off by the officers, who pulled their patrol car in front of his car. Appellant described Browning running over to him, snatching a phone he had from his hand and trying to drag him out his car. At that point, his car was in reverse and his foot slipped off the brake, causing the car to "roll" back. Appellant testified that he could not remember how the car got in reverse and denied pressing the accelerator. Appellant described Browning running with the car, in an apparent attempt to get him out, rather than being dragged by the car. Appellant explained that when the officer fell from the car, he panicked and fled the area.
 {¶ 10} In his first assignment of error, appellant contends that there was insufficient evidence to convict him of felonious assault. In his second assignment of error, appellant argues that the conviction was against the manifest weight of the evidence.
 {¶ 11} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. As a *Page 7 
matter of appellate review, they involve different means and ends. Id. at 386-89. They also invoke different inquiries with different standards of review. Id.; State v. Smith, 80 Ohio St.3d 89, 113, 1997-Ohio-355,684 N.E.2d 668. In the simplest sense, this difference is that sufficiency tests the burden of production while manifest weight tests the burden of persuasion. Thompkins at 390 (Cook, J., concurring).
 {¶ 12} Sufficiency is a question of law. Id. at 386; Smith, supra at 113. If the State's evidence is found to have been insufficient as a matter of law, then on appeal, the court may reverse the trial court.Thompkins at paragraph three of the syllabus, citing Section 3(B)(3), Article IV, Ohio Constitution. Under this construct, the State would have failed its burden of production, and as a matter of due process, the issue should not even have been presented to the jury.Thompkins at 386; Smith at 113.
 {¶ 13} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Under this standard, an appellate court does not conduct an exhaustive review of the record, or a comparative weighing of competing evidence, or speculation as to the credibility of any witnesses. Instead, the appellate court presumptively "view[s] the evidence in a *Page 8 
light most favorable to the prosecution." Id. "The weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 14} Manifest weight is a question of fact. Thompkins at 387. If the trial court's judgment is found to have been against the manifest weight of the evidence, then an appellate panel may reverse the trial court. Id . Under this construct, the appellate court "sits as the `thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." Id.
 {¶ 15} In a manifest weight analysis, an appellate court "reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and * * * resolves conflicts in the evidence." Thompkins at 387. "A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial." Id. at 390 (Cook, J., concurring). An appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 387. See, also, id. at 390 (Cook, J., concurring) (stating that the "special deference given in a *Page 9 
manifest-weight review attaches to the conclusion reached by the trier of fact"). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387.
 {¶ 16} Finally, although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. Thompkins at 388. In the present case, manifest weight is dispositive.
 {¶ 17} R.C. 2903.11, governing felonious assault, provides in pertinent part:
 {¶ 18} "(A) No person shall knowingly do either of the following:
 {¶ 19} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 20} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 21} "Knowingly" is defined in R.C. 2901.22(B) as follows:
 {¶ 22} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 23} R.C. 2901.01(A)(3) defines "physical harm" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(5) 5) defines "serious physical harm" as any of the following: *Page 10 
 {¶ 24} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 25} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 26} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 27} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 28} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 29} Appellant argues that "[u]nder the facts and circumstances and the split second time frame in which [his car reversed], it cannot be said that the state met its burden of proving [that he] knowingly put the vehicle into reverse and/or knowingly caused serious physical harm." We disagree.
 {¶ 30} Both officers testified that, upon their second encounter with appellant, they repeatedly told him to turn down his music and exit his vehicle because he was under arrest. The officers described appellant ignoring them and pretending as if he could not hear and/or understand them. Browning subsequently opened appellant's door and attempted to remove him from the vehicle. Both officers testified that they saw appellant shift the vehicle from park to reverse and accelerate at a high rate of *Page 11 
speed. In addition to the officers' testimony, a video surveillance tape from the gas station depicted the car accelerating backwards with Browning hanging on the door.
 {¶ 31} The testimony and evidence also demonstrated that Browning suffered physical harm and serious physical harm. One of the technicians who responded to the scene described Browning's uniform as worn through to the skin at the elbows and knees, and that the pockets of his shirt were torn off. The technician testified that Browning was covered in mud and had gravel throughout his wounds, which she described as "road rash." Photographs taken at the hospital depicted scrapes and gravel burns to Browning's head, side, arms and hands. He was discharged approximately three hours later with a prescription for pain medication. The next day, while at home, however, Browning passed out and was taken back to the hospital, where he stayed for two-and-a-half days. Browning testified that, even six months after the incident, he still suffered from discomfort in his leg, lower back and neck. He further testified that he missed approximately two months of work as a result of the injuries he sustained during the incident.
 {¶ 32} In light of this testimony, the manifest weight of the evidence supports appellant's felonious assault convictions. Thus, his insufficiency of the evidence argument also fails. Appellant's first and second assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 12 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 FRANK D. CELEBREZZE, JR., A.J., and PATRICIA A. BLACKMON, J., CONCUR *Page 1