[Cite as *State v. Williams*, 2019-Ohio-2734.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                            :

    Plaintiff-Appellee,         :

                                       No. 107285

    v.                                         :

MARQUEZ A. WILLIAMS,           :

    Defendant-Appellant.       :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 3, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-618543-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Brian Kraft, Assistant Prosecuting Attorney, *for appellee.*

Thomas A. Rein, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1}   Defendant-appellant Marquez Williams appeals his convictions for the death of Elante Johnson ("Johnson").   We affirm.

## I.    BACKGROUND AND FACTS

{¶ 2}    On April 9, 2017, at approximately 3:00 p.m. on a sunny Sunday afternoon, customers were buying gasoline and patronizing the market at the Speedy Grub Hub food market and gas station ("Speedy") on Broadway Avenue in Cleveland's Slavic Village neighborhood.    Twenty-one-year-old Johnson was walking out of the market toward Broadway Avenue when a male jogged across the street and, when he was just a few feet from Johnson, pulled out a gun and fired.

{¶ 3}    Johnson turned and attempted to retrieve his weapon as he began running in the opposite direction.  The gunman followed Johnson behind Speedy to the next block and shot Johnson again.   Johnson fell in the street and, as he attempted to scoot backwards away from the shooter, the shooter walked over to Johnson and shot him three times at point-blank range.

{¶ 4}    The shooter, followed by a second male who was talking on a cell phone, began walking down the street.  They were promptly picked up by a blue Chevrolet Impala with distinctive black wheels and left the scene as two officers arrived to attend to Johnson.

{¶ 5}    Johnson suffered five gunshot wounds that resulted in his death. Williams was indicted on June 24, 2017, three days after the indictment of Williams's cousin and codefendant Damon Chapman, Jr.[1] ("Chapman"), the male

---

[1] Cuyahoga C.P. No. CR-17-618543-A.

who was picked up by the Impala along with the shooter. Williams was charged as a participant in Johnson's shooting, as the driver of the Impala.

{¶ 6} On April 11, 2018, the trial court granted Williams's motion to sever the trials of Williams and Chapman and the trial commenced the same date. At the close of the evidence, Williams moved for judgment of acquittal pursuant to Crim.R. 29 on all counts. The prosecution voluntarily withdrew the gang activity specifications. The trial court denied the motion on the remaining counts as well as the renewed motion for acquittal presented shortly thereafter.

{¶ 7} The trial court instructed the jury on aiding and abetting and complicity. Williams was convicted of aggravated murder, murder, two counts of felonious assault and discharge of a firearm in or near prohibited premises. Each count carried one- and three-year firearm specifications.

{¶ 8} The state requested that the murder and felonious assault charges merge into the aggravated murder conviction for sentencing, and requested a separate sentence for discharge of a firearm in or near prohibited premises. Williams was sentenced to 20 years to life on the aggravated murder charge; three-years on the discharge of a firearm charge to run concurrent with the aggravated murder; and consecutive terms of three years each for two firearm specifications to be served prior to the primary sentence, for a total of 26 years to life with a possibility of parole after 26 years, and a mandatory five-year period of postrelease control.

{¶ 9} Williams appeals the convictions.

## II.   ASSIGNMENTS OF ERROR

{¶ 10}   Williams proffers seven assigned errors for our review:

I.   The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim.R. 29(A), on the charges, and thereafter entering a judgment of conviction of that offense as those charges were not supported by sufficient evidence, in violation of defendant's right to due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution.

II.   Appellant's convictions are against the manifest weight of the evidence.

III.   Appellant was denied a fair trial by the homicide detective's improper comments and conclusions while testifying.

IV.   The trial court erred when it admitted other acts testimony in violation of R.C. 2945.59, Evid.R. 404(B) and Appellant's rights under Article I, Section 10 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution.

V.   The trial court denied Appellant's right to a fair trial by not giving a complete jury instruction.

VI.   Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article I of the Ohio Constitution and the Sixth and Fourteenth Amendments.

VII.   The trial court erred by ordering convictions and a consecutive sentence for separate counts and specifications because the trial court failed to make a proper determination as to whether those offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.14.

## III.   DISCUSSION

### A.   Sufficiency and Manifest Weight of the Evidence

{¶ 11}   We combine Williams's first and second errors challenging the sufficiency and weight of the evidence for ease of analysis.  We find that these errors lack merit.

### 1. Standard of Review

{¶ 12} "A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence." *State v. Capp*, 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295, ¶ 19.

> Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for an offense. Accordingly, an appellate court reviews a trial court's denial of a defendant's motion for acquittal using the same standard it applies when reviewing a sufficiency-of- the-evidence claim.

*State v. Hoskin-Hudson*, 8th Dist. Cuyahoga No. 103615, 2016-Ohio-5410, ¶ 7, citing *State v. Capp*, 8th Dist. No. 102919, 2016-Ohio-295, ¶ 19.

{¶ 13} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). A challenge to the sufficiency of the evidence is a question of law that asks whether the state met its burden of production. A manifest weight challenge is a question of fact and asks whether the state met its burden of persuasion. *State v. Jackson*, 8th Dist. Cuyahoga No. 88028, 2007-Ohio-823, ¶ 11, citing *Thompkins* at 386.

{¶ 14} Thus, a sufficiency inquiry is not whether the prosecution's evidence "is to be believed, but whether, if believed, the evidence admitted at trial supported the conviction." *State v. Rudd*, 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106, ¶ 32, citing *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25. We view the evidence in a light most favorable to the prosecution and determine whether "'any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54,

2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 15} "A manifest weight inquiry looks at whether the evidence was substantial enough for a jury to reasonably conclude that all of the elements of the alleged crime have been proved beyond a reasonable doubt. We sit 'as a thirteenth juror.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); *State v. Newett*, 8th Dist. Cuyahoga No. 103518, 2016-Ohio-7605, ¶ 39.

{¶ 16} Thus,

> [w]e review the entire record, consider the credibility of the witnesses, weigh the evidence and all reasonable inferences, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81. "Weight is not a question of mathematics, but depends on its effect in inducing belief." *Black's Law Dictionary* 1594 (6th Ed.1990). *Thompkins* at 387. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Martin* at 175.

*Newett* at ¶ 40.

### 2.    Discussion

{¶ 17} Williams admits that his vehicle is depicted in the surveillance video and that he was present at the gas station when the shooting occurred. However, Williams denies that he had anything to do with the shooting.

{¶ 18} Cleveland Police Department ("CPD") Detectives Kathy Cruz ("Det. Cruz") and Raymond Diaz ("Det. Diaz") testified that they arrived at the scene

at 4:00 p.m. The detectives requested that Forensic Video Specialist Tom Ciula ("Ciula") retrieve multiple videos from four businesses and a residence in the area of the incident. Ciula prepared a report, photographs, and a video compilation of the events that transpired prior to, during, and shortly after the shooting. The evidence was viewed by the jury.

{¶ 19} The videos depict the Impala circling the area near Speedy prior to entering the gas station and initially appears to contain four individuals. Johnson is seen walking down Broadway toward Speedy. The Impala circles back into camera view on Broadway and now appears to have only two occupants. A male alleged to be Chapman is observed walking along the route behind Johnson while talking on his cell phone. The Impala pulls into the second of two rows of gas station pumps with its tank on the opposite side of the pumps that parallel Broadway Avenue facing west toward Hinde Avenue, while Johnson is inside of Speedy.

{¶ 20} Chapman, still talking on the cell phone, is standing near the sidewalk in the driveway of the business immediately adjacent to Speedy. Chapman is facing Broadway Avenue and gesturing to someone across the street. Chapman moves further up the driveway and stands behind a small white commercial vehicle parked where he can view the Speedy lot. Johnson exits the Speedy market, walking toward Broadway, when a male wearing a black-hooded sweatshirt and bright-white athletic shoes jogs across Broadway Avenue toward Johnson, pulls out a gun, and shoots Johnson who turns to run and drops a gun that he attempts to pull from his pocket.

{¶ 21} Speedy customers and individuals in the immediate area begin to scramble when the shooting starts. Johnson runs toward Hinde Avenue with the shooter in pursuit. Chapman walks to the other side of the white commercial vehicle to observe the incident without obstruction, then touches the front of the white truck with both hands as he turns and exits the driveway.

{¶ 22} Concurrently, an unidentified male exits the back seat of the Impala, begins walking toward the area where Chapman had been standing but abruptly returns to the Impala. Williams, the admitted driver, never exits the Impala. The Impala pulls out, turns right onto Hinde Avenue and makes a second right onto Broadway Avenue toward Morton Avenue as a police car pulls into Speedy.

{¶ 23} Johnson emerges from the area behind Speedy onto Morton Avenue when he falls to the street, apparently hit from behind by another round of gunfire. As Johnson sits up and attempts to scoot backwards away from the oncoming shooter, the shooter walks over to Johnson and shoots him several more times.

{¶ 24} The shooter walks down Morton Avenue in the opposite direction of Broadway Avenue followed by Chapman who is still talking on the cell phone. The Impala approaches from Broadway Avenue. Chapman and the shooter climb into the Impala and exit the scene as police arrive to attend to Johnson.

{¶ 25} CPD Officers Friedrich Kaufmann and James Crivel ("Officer Crivel") testified that they were the first responders to Speedy and were immediately directed to Morton Avenue where Johnson was laying. Witnesses referred to

Johnson as "E" and Officer Crivel recalled that an individual named "E" was reportedly involved in the shooting of Chapman about six months earlier.

{¶ 26} CPD Detective Darren Robinson of the crime-scene unit recovered multiple Blazer Smith & Wesson .40 caliber bullet casings in front of the Speedy market building, in the gas station lot and on Morton Avenue. The 9 mm gun dropped by Johnson contained eight live rounds with one jammed in the slide.

{¶ 27} Based on a witnesses' tip, Det. Diaz obtained a photograph of Chapman and discovered that Johnson may have been involved in a 2016 incident where Chapman was shot several times. CPD Fingerprint Examiner Shelby McMullen testified that the fingerprints taken from the hood of the white commercial truck belonged to Chapman.

{¶ 28} Several days after the shooting, detectives received information that tied the Impala to Williams. A search of the license-plate reader database revealed multiple photographs of the Impala with the distinctive black wheels. Det. Diaz compared the photographs to the surveillance videos and Williams became a suspect. The Impala was registered to Williams's mother and was located at an apartment building in Euclid, Ohio. Crime Scene Detective Todd Clemens processed the Impala.

{¶ 29} Williams contacted Det. Cruz on June 12, 2017, and requested to retrieve property from the vehicle. By that time, a warrant for Chapman was pending but Williams was still under investigation. On June 14, 2017, Williams

voluntarily appeared at the police station and a videotaped interview was conducted by Det. Cruz and Det. Remington.

{¶ 30} Though not under arrest, Williams was advised of his rights at the beginning of the interview. Williams identified his car in the video photographs, admitted that he was at Speedy when the shooting started but claimed that he was not involved and did not know who was. During the interview, Williams voluntarily surrendered a Smith & Wesson .40 caliber revolver that was in the vehicle that he arrived in. Williams was ultimately allowed to leave while police continued their investigation. Police also learned that Chapman and Williams were cousins.

{¶ 31} Det. Diaz secured Williams's cell-phone and cell-tower records and contacted Williams for a second interview. Williams failed to appear. Chapman was arrested. Williams was subsequently arrested. At the interview following his arrest, Det. Diaz showed Williams the surveillance video but Williams maintained his innocence.

{¶ 32} County Forensic Scientist Kristen Koeth testified that the seven Blazer .40 caliber cartridges located at the scene were fired from the same weapon but were not from the gun that police had recovered from Williams. County Deputy Medical Examiner Forensic Pathologist Dr. Erica Armstrong confirmed that Johnson presented with five gunshot wounds resulting in his death.

**B. Analysis**

{¶ 33} Williams was convicted of:

| Count 1 | Aggravated murder, R.C. 2903.01(A), with one- and three-year firearm specifications (R.C. 2941.141 and 2941.145). |
|---------|---------|
| Count 2 | Murder, R.C. 2903.02(B), with one- and three-year firearm specifications (R.C. 2941.141 and 2941.145). |
| Count 3 | Felonious assault, R.C. 2903.11(A)(2), with one- and three-year firearm specifications (R.C. 2941.141 and 2941.145). |
| Count 4 | Felonious assault, R.C. 2903.11(A)(1), with one- and three-year firearm specifications (R.C. 2941.141 and 2941.145). |
| Count 5 | Discharge of firearm on or near prohibited premises, R.C. 2923.162(A)(3) with one- and three-year firearm specifications (R.C. 2941.141 and 2941.145). |

{¶ 34} Williams argues that there was insufficient evidence that he was guilty of aggravated murder or any other crime. He asserts that the evidence clearly demonstrates he did not perform the shooting and that the evidence and testimony offered by the state is based on layers of inferences. Williams asserts the state failed to show that he acted with the requisite mens rea or was otherwise complicit in the crimes. He adds that his "mere presence at the scene is not enough" and the state must show that Williams "took some affirmative action to assist, encourage, or participate in the crime by some act, word or gesture." *State v. Sims*, 11th Dist. Lake No. 2001-L-081, 2003-Ohio-324, ¶ 44.

{¶ 35} The state counters that the evidence demonstrates that Williams was complicit in the death of Johnson. R.C. 2923.03, governing complicity, provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense * * * [c]onspire

with another to commit the offense in violation of * * * R.C. 2923.01."

R.C. 2923.03(A)(2)-(3).

> (F)    Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

{¶ 36} "Thus, the complicity statute requires, inter alia, that the defendant

aid and abet or conspire with another in the commission of the offense with the same

culpability required for the principal offense. R.C. 2923.03(A)(2) and (3)." *State v.*

*Johnson*, 8th Dist. Cuyahoga No. 106141, 2018-Ohio-4023, ¶ 10.

{¶ 37} As comprehensively explained by this court in *Johnson*,

> "[T]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 245-246, 754 N.E.2d 796.

*Id.* at ¶ 11.

{¶ 38} In addition,

> [T]he requisite intent may be inferred from the circumstances surrounding the crime, including a defendant's presence, companionship, and conduct before and after the offense is committed. *Id.*, citing *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971). "When an individual acts to aid or abet a principal in the commission of an offense, the individual and principal are equally guilty and the individual is prosecuted and punished as if he were a principal offender. *See* R.C. 2923.03(F)." *State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119, ¶ 21.

*Id.*

**{¶ 39}** It is also true that,

> [A] charge of complicity also may be brought pursuant to R.C. 2923.03(A)(3) against a person who "'conspire[s] with another to commit [an] offense in violation of [R.C.] 2923.01.'" *State v. Keenan*, 81 Ohio St.3d 133, 151, 1998-Ohio-459, 689 N.E.2d 929, quoting R.C. 2923.03(A)(3). Such a charge of complicity also may be stated in terms of the principal offense pursuant to R.C. 2923.03(F). *Keenan* at 151.

*Id.* at ¶ 12.

**{¶ 40}** The trial court instructed the jury that, as Williams points out, "mere association with a principal offender is not enough to sustain the conviction based on aiding and abetting." (Tr. 697.) "There must be some level of active participation by way of providing assistance and encouragement." *Id.* "Aid means to help, assist, direct, or strengthen. Abet means to encourage, counsel, incident or assist." *Id.* A person who "aids and abets or assists in procuring with another to commit the offense may be prosecuted as if he were the principal offender." (Tr. 696.)

**{¶ 41}** The court further explained to the jury that "it is not necessary that you find the defendant actually, personally, and with his own hands committed the offense." *Id.*

> If you find that the defendant performed a joint design and purpose with another purpose to commit such a crime, either procured or aided or abetted or assisted such person in the commission of the crime in pursuance of such a previously-formed common design and purpose then the defendant would be guilty of the crime so committed and may be convicted under the indictment of the crime as charged within.
>
> To prove aiding and abetting, however, direct and circumstantial evidence may be introduced; therefore, participation and criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed. In other words, there must

> be proof that defendant had in some way participated in or been a part of the act or acts committed.

(Tr. 696-697.)

**{¶ 42}** Aggravated murder is defined in R.C. 2903.01(A) "as purposely causing the death of another and with prior calculation and design." *State v. Lash*, 8th Dist. Cuyahoga No. 104310, 2017-Ohio-4065, ¶ 35. "'The elements of purpose and prior calculation and design are distinct, and the state must prove both to support a conviction of aggravated murder under R.C. 2903.01.'" *Id.*, citing *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, at syllabus.

**{¶ 43}** "There is no bright-line test that distinguishes between the presence or absence of prior calculation and design and each case turns on the particular facts of the case." *Id.*, citing *Walker* at ¶ 19.

> The phrase "'prior calculation and design'" indicates "'an act of studied care in planning or analyzing the means of the crime, as well as a scheme compassing the death of the victim.'" *Walker* at ¶ 17, quoting Ohio Legislative Service Commission, Proposed Ohio Criminal Code: Final Report of the Technical Committee to Study Ohio Criminal Laws and Procedures, at 71 (1971). "Evidence of an act committed on the spur of the moment or after momentary consideration is not evidence of a premeditated decision or a studied consideration of the method and the means to cause a death." *Walker* at ¶ 18.

*Lash*, 8th Dist. Cuyahoga No. 104310, 2017-Ohio-4065, ¶ 36.

**{¶ 44}** Prior calculation and design may be established by an execution-style shooting. *Id.* at ¶ 37, citing *Walker* at ¶ 21, citing *State v. Palmer*, 80 Ohio St.3d 543, 569-570, 687 N.E.2d 685 (1997) (defendant shot the victim in the head in an execution-style manner after the victim had fallen to the ground). "'[I]f the victim is killed in a cold-blooded, execution-style manner, the killing bespeaks

aforethought, and a jury may infer prior calculation and design.'" *Id.*, quoting *State v. Hough*, 8th Dist. Cuyahoga No. 91691, 2010-Ohio-2770, ¶ 19.

{¶ 45} In this case, the state produced sufficient evidence to demonstrate that Williams acted with purpose to cause the death of Johnson and that he aided and abetted the principal offender, the unnamed shooter, and Chapman and otherwise assisted and cooperated in the commission of the crime.

{¶ 46} The video evidence depicts Williams circling the area in the Impala, initially with three other occupants. As Johnson walks toward Speedy, Chapman and the shooter exit the vehicle. The shooter waits across the street from Speedy while Chapman follows Johnson and stops in the driveway next to Speedy.

{¶ 47} Williams pulls into Speedy and parks at a gas pump but the gas tank is on the opposite side of the vehicle. Williams never exits the Impala and nobody attempts to put gas in the vehicle. Chapman gestures to the shooter as Johnson exits Speedy. The shooter approaches Johnson and shoots him at close range. Johnson turns and runs. The shooter runs parallel with Johnson directly past the Impala and pursues Johnson down the side street and behind Speedy where Johnson is hit again.

{¶ 48} The Impala exits Speedy, turns onto Broadway and onto the side street. After Johnson falls to the ground, the shooter walks over to Johnson and shoots him three times at close range. The Impala picks up Chapman and the shooter and exits the video scene as police approach Johnson. The record also indicates that, approximately six months prior to the shooting, Johnson was

allegedly involved in the shooting of Chapman and that Chapman and Williams are cousins.

{¶ 49} As the Ohio Supreme Court has recognized,

> pursuing and killing an incapacitated victim after an initial confrontation strongly indicates prior calculation and design. *Id.*, citing *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 45. *See also State v. Claytor*, 61 Ohio St.3d 234, 241, 574 N.E.2d 472 (1991) (defendant's act of pursuing the victim who was already wounded and killing him with a bullet in the face went beyond the impulse of the moment to constitute prior calculation and design); *Palmer* at 569-590 (after victim fell to the ground, defendant shot the victim in the head in an execution-style manner).

*Lash,* 8th Dist. Cuyahoga No. 104310, 2017-Ohio-4065, ¶ 38.

{¶ 50} The facts of this case indicate the implementation of a calculated design, scheme, and decision. "The cold-blooded, execution-style manner of killing allowed the jury to infer a prior calculation and design." *Id.* at ¶ 40.

{¶ 51} Nor are we swayed by Williams's assertion that the verdict is based on layers of inferences.

> Unlike direct evidence in which a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish, circumstantial evidence requires the drawing of inferences that are reasonably permitted by the evidence.

*State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13.

{¶ 52} "Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind." *State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37. The difference between circumstantial and

direct evidence are irrelevant to the probative value as each carries the same weight. *Cassano* at ¶ 13, citing *State v. Treesh*, 90 Ohio St.3d 460, 485, 2001-Ohio-4, 739 N.E.2d 749. "The Ohio Supreme Court has 'long held that circumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *Id.*, citing *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990).

{¶ 53} Viewing the evidence in a light most favorable to the state, we hold that the evidence is sufficient for any rational trier of fact to determine beyond a reasonable doubt that prior calculation and design was established by the evidence. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). We also hold that the evidence shows that Williams aided and abetted the shooter in the death of Johnson.

{¶ 54} We further find, after reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses while giving deference to the trier of fact, the jury did not lose its way and create "such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *Thompkins* at 387.

{¶ 55} Williams summarily states that all of his convictions should be reversed but does not put forth his arguments as to any other charge. We briefly state that the evidence supports the jury's conclusion on the aggravated murder

conviction that the shooting involved a firearm upon which the firearm specifications are based. Shooting at Johnson while chasing him across the street and while Johnson was laying in the street also supports the conviction for discharging a firearm over a public road or highway under R.C. 2923.162(A)(3), which is a strict liability offense. *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770, ¶ 34 (8th Dist.).

{¶ 56} We need not address the merged counts. Pursuant to R.C. 2941.25 governing allied offenses of similar import, "'a 'conviction' consists of a guilty verdict and the imposition of a sentence or penalty.'" (Emphasis sic.) *State v. Franks*, 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶ 18, quoting *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12, citing *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 135. The merged counts are not convictions. *Id.*, citing *State v. Williams*, 4th Dist. Scioto No. 11CA3408, 2012-Ohio-4693, ¶ 54; *State v. McKinney*, 10th Dist. Franklin No. 08AP-23, 2008-Ohio-6522, ¶ 39.

{¶ 57} The first and second assignments of error are without merit.

## C. Improper Comments of Detective Witness

{¶ 58} Williams claims that several "opinions" voiced by Det. Diaz when testifying about Williams's voluntary interview on June 14, 2017, deprived him of a fair trial, such as the statements that Williams was dishonest during the police interviews. Generally, it is error for a witness to comment on the truthfulness of

another witness.  *State v. Huff*, 145 Ohio App.3d 555, 561, 763 N.E.2d 695 (1st Dist. 2001).

{¶ 59} We preface this analysis by observing that no objections were posed to the testimony during the trial so we conduct a plain-error analysis.

> [A] reviewing court's analysis is generally limited to reviewing issues raised on appeal solely for plain error or defects affecting a defendant's substantial rights pursuant to Crim.R. 52(B).  *State v. Tisdale*, 8th Dist. Cuyahoga No. 74331, 1998 Ohio App. LEXIS 6143 (Dec. 17, 1988).  The plain error doctrine should be invoked by an appellate court only in exceptional circumstances to prevent a miscarriage of justice.  *State v. Cooperrider*, 4 Ohio St.3d 226, 227, 448 N.E.2d 452 (1983).  Plain error will be recognized only where, but for the error, the outcome of the case would clearly have been different.  *Id.*

*State v. King*, 184 Ohio App.3d 226, 2009-Ohio-4551, 920 N.E.2d 399, ¶ 8 (8th Dist.).

{¶ 60} "'Under the plain-error analysis'" a party is required to "'establish that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions.'"  *State v. Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921, ¶ 17, quoting *State v. Waddell*, 75 Ohio St.3d 163, 166, 1996-Ohio-100, 661 N.E.2d 1043.

{¶ 61} Appellant contends that Det. Diaz's testimony exceeded the scope of factual evidence and constituted the detective's opinion as to Williams's guilt in an effort to sway the jury.  The state asked Det. Diaz why he mentioned obstruction of justice during the first police interview.  Det. Diaz responded,

> I still wanted to do some more invest[igation] in[to] this before I decided to eventually arrest him for the agg[ravated] murder but at that

time I felt he was obstructing because I knew that he was there and he was lying about the people he was with.

(Tr. 595-596.)

{¶ 62} The state also asked whether Det. Diaz considered Williams to be "somebody that was cooperating with the investigation," Det. Diaz said, "I would consider him to be a compulsive liar as to most of the things that he told me." (Tr. 654.) The state then asked, "Does that mean he was cooperating with you?" (Tr. 654-655.) Det. Diaz responded, "He was trying to help himself." (Tr. 655.)

{¶ 63} The final exchange of which Williams complaints is:

State:     Although as you've described Marquez Williams was not being completely truthful with you[,] were there parts of what Marquez Williams told you in that interview that led you to believe he had knowledge, general knowledge of the facts and circumstances of what happened at the gas station?

Det. Diaz:     Yes.

(Tr. 657.) Det. Diaz did agree that Williams cooperated by appearing voluntarily for the first interview and turning over the gun that was downstairs in his sister's car.

{¶ 64} We do not find that these statements rise to the level of plain error. Det. Diaz was asked about his thought processes during the initial video interview. He was not testifying as an expert. *See State v. Boston,* 46 OhioSt.3d 108, 545 N.E.2d 1220 (1989), relied on by Williams. Det. Diaz did not believe that Williams was fully forthcoming during the interview.

Evid.R. 701 and 704 qualify the officer's testimony as lay opinion. Evid.R. 701 permits opinions and inferences by a lay witness rationally based on his perception and if helpful, to "a clear understanding of the testimony" of the witness or to "the determination of a fact in issue."

And "an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704.

Further, the jury was the final arbiter in determining the credibility of Appellant's statements and gestures because the jury in this case was given the taped interview and able to view the video and hear the audio for themselves. They were therefore able to independently observe Appellant's behavior and judge his credibility.

*State v. Nelson-Vaughn*, 5th Dist. Stark No. 2015 CA 00124, 2016-Ohio-1426, ¶ 41-42.

{¶ 65} The jury in the instant case viewed the videotaped interviews as well as the video evidence of Williams at the scene. Williams admitted that he was driving the Impala at Speedy during the shooting but denied involvement or knowledge. The jury was clearly free to draw its own opinion as to Williams's veracity. *Id.* at ¶ 42.

{¶ 66} We cannot say that, but for this testimony, the outcome of the trial would have been different. *Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921, ¶ 17, *Waddell*, 75 Ohio St.3d 163, 166, 1996-Ohio-100, 661 N.E.2d 1043.

{¶ 67} The third assigned error is without merit.

**D. Other Acts Testimony**

{¶ 68} The fourth assigned error charges that the testimony by Det. Diaz regarding the victim's gang affiliation with the Heartless Felons was inadmissible and highly prejudicial as other acts testimony because the first four counts of the indictment involved gang activity specifications. Evid.R. 404(B), R.C. 2945.59.

{¶ 69} Evid.R. 404(B) provides:

Evidence of other crimes, wrong, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶ 70} Pursuant to R.C. 2945.59,

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

{¶ 71} No objections were posed during the trial, so we also analyze this issue for plain error. As Williams acknowledges in his brief, Det. Diaz did not find that Williams was affiliated with the Heartless Felons. "I did not find any ties to him being affiliated with the Heartless Felons." (Tr. 645.) In addition, in response to Williams's Crim.R. 29 motion, the state withdrew the gang activity specifications.

{¶ 72} Once again, we are unable to say that but for this testimony, the outcome of the trial would have been different. *Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921, ¶ 17, *Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

{¶ 73} The fourth assigned error is overruled.

**E. Incomplete Jury Instruction**

{¶ 74} In the fifth assignment of error, Williams's challenges the propriety of the trial court's failure to provide a jury instruction for an "accessory after the fact." Once again, there is no objection in the record and our review of a failure to objection to a jury instruction is for plain error.

> "On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A).

*State v. Dues*, 2014-Ohio-5276, 24 N.E.3d 751, ¶ 40 (8th Dist.).

{¶ 75} "A reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear that the jury instructions constituted prejudicial error." *State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2014-Ohio-3583, ¶ 49. "In order to determine whether an erroneous jury instruction was prejudicial, a reviewing court must examine the jury instructions as a whole." *Id.* "A jury instruction constitutes prejudicial error where it results in a manifest miscarriage of justice. Conversely, any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *Id.*

{¶ 76} Williams offers that the jury should have been instructed that "a defendant's conduct as an accessory after the fact is not criminal and cannot constitute criminal conduct." It is true that an "accessory after the fact" is not a crime offense in Ohio. *State v. Brown*, 2016-Ohio-1358, 62 N.E.3d 943, ¶ 148 (11th Dist.). It is also true that the state's theory of the case and the evidence presented in support was based on aiding and abetting and not an accessory after the fact.

{¶ 77} "A trial court has discretion to determine whether the evidence adduced at trial was sufficient to warrant an instruction." *State v. Austin*, 8th Dist. Cuyahoga Nos. 106215 and 106530, 2018-Ohio-3048, ¶ 54, citing *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 72. Thus, "'a court should not give an instruction unless it is specifically applicable to the facts in the case.'" *State v. Rac*, 2d Dist. Montgomery No. 27536, 2019-Ohio-893, ¶ 15, citing *State v. Fritz*, 163 Ohio App.3d 276, 2005-Ohio-4736, 837 N.E.2d 823 (2d Dist.), citing *State v. Guster*, 66 Ohio St.2d 266, 421 N.E.2d 157 (1981).

{¶ 78} The state alleged, as the trial court instructed, that Williams acted in concert with others to commit the offense "or that he aided and abetted the person who did directly or personally commit the offense." (Tr. 695.)

> Aid means to help, assist, or strengthen. Abet means to encourage, counsel, incite, or assist.
>
> Ordinarily where a crime is committed by more than one person each person is regarded as if he were the principal offender and is guilty as if he personally performed the crime. A person who acts in concert with the principal with the intent to aid the principal in the performance of an act or commission of a crime is regarded as the aider and abettor. Whoever aids and abets or assists in procuring with another to commit the offense may be prosecuted as if he were the principal offender.
>
> When two or more persons have a common purpose to commit a crime and one does one part and the second performs another, those acting together are equally guilty of the crime.
>
> The Court instructs you as a matter of law that if you find beyond a reasonable doubt that the crime was committed it is not necessary that you find the defendant actually, personally, and with his own hands committed the offense.
>
> If you find that the defendant performed a joint design and purpose with another person to commit such a crime, either procured or aided

or abetted or assisted such person in the commission of the crime in pursuance of such a previously-formed common design and purpose, then the defendant would be guilty of the crime so committed and may be convicted under the indictment of the crime as charged within.

To prove aiding and abetting, however, direct and circumstantial evidence may be introduced; therefore, participation and criminal intent may be inferred from presence, companionship, and conduct before and after the offense is committed. In other words, there must be proof that defendant had in some way participated in or been a part of the act or acts committed.

A person's mere association with a principal offender is not enough to sustain the conviction based on aiding and abetting. There must be some level of active participation by way of providing assistance or encouragement.

(Tr. 695-697.)

{¶ 79} Williams fails to cite a case or statute in support of this premise. As a result, this court is not required to address the issue pursuant to App.R. 16(A)(7). However, we elected to address it in the interest of justice.

{¶ 80} We do not find that the trial court abused its discretion and that the failure to provide the instruction requested by Williams constitutes error, period. The fifth assigned error lacks merit.

## F.  Ineffective Assistance of Counsel

{¶ 81} Williams's argument in the sixth assignment of error that the failure to request the additional jury instruction regarding an "accessory after the fact" constituted ineffective assistance of counsel is moot in light of our finding that no error occurred.  App.R. 12(A).

## G. Allied Offenses and Consecutive Sentences

{¶ 82} Regarding the seventh assignment of error, after the merger of Counts 2, 3 and 4 into Count 1 aggravated murder, a firearm specification remained for Count 1. Also remaining was Count 5, discharging a firearm on or near prohibited premises, also paired with a firearm specification. We conduct a de novo review on the question of allied offenses. *State v. Cannon*, 8th Dist. Cuyahoga No. 100658, 2014-Ohio-4801, ¶ 53, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶ 83} An allied offense analysis is not required for the firearm specifications because a "firearm specification [is] not a separate offense, but is merely a sentence enhancement" and "cannot be allied offense[s] of similar import." *Id.*, quoting *State v. Whittsette*, 8th Dist. Cuyahoga No. 70091, 1997 Ohio App. LEXIS 500, *6 (Feb. 13, 1997), citing *State v. Blankenship*, 102 Ohio App.3d 534, 547, 657 N.E.2d 559 (12th Dist.1995).

{¶ 84} R.C. 2929.14(B)(1)(g) serves as an "exception to the general rule that a trial court may not impose multiple firearm specifications for crimes committed as part of the same transaction." *Id.* at ¶ 31, citing *State v. Young*, 8th Dist. Cuyahoga No. 102202, 2015-Ohio-2862, ¶ 9; *State v. Vanderhorst*, 8th Dist. Cuyahoga No. 97242, 2013-Ohio-1785, ¶ 10.

{¶ 85} R.C. 2929.14(B)(1)(g) provides:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape, and if the offender is convicted of or pleads

guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, *the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty* and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

(Emphasis added.)  *Id.*

{¶ 86} Thus, "R.C. 2929.14(B)(1)(g) requires the imposition of consecutive sentences for the firearm specifications." *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 53 (8th Dist.), citing *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770, ¶ 41 (8th Dist.).  As a result, "'the mandatory requirement to order consecutive service of certain specifications under R.C. 2929.14(B)(1)(g) supersedes the findings required by R.C. 2929.14(C)(4).'" *Id.*, quoting *James* at ¶ 46.

{¶ 87} Finally, sentencing was proper because as we previously acknowledged in our complicity analysis,

> The complicity statute requires that an accomplice be treated as though he was the person who committed every act of the underlying principal offense.  *State v. Kimble*, 7th Dist. Mahoning No. 06 MA 190, 2008-Ohio-1539, ¶ 27.  "In other words, the court can impute the elements of the principal offense, committed by the principal, to the aider and abettor."  *Id.*, citing *State v. Jackson*, 90 Ohio App.3d 702, 705, 630 N.E.2d 414 (6th Dist.1993); *State v. Hurse*, 10th Dist. Franklin No. 14AP-687, 2015-Ohio-2656, ¶ 11.

*State v. Gray*, 8th Dist. Cuyahoga No. 106828, 2018-Ohio-4417, ¶ 19.

{¶ 88} Moving to the issue of whether Counts 1 and 5 are allied offenses subject to merger, R.C. 2941.25 provides:

> When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense.  When

the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses.

*State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 24, citing R.C. 2941.25(B).

{¶ 89} When determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25,

[C]ourts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance — in other words, did each offense cause separate, identifiable harm? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id.* at ¶ 6, citing *Ruff* at ¶ 31.

{¶ 90} Williams's convictions for aggravated murder and discharging a firearm did not merge because the offenses are "of dissimilar import," and "the defendant's conduct constitutes offenses involving separate victims" and "the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. Obviously, Johnson was the victim of the aggravated murder that involved "separate animus and motivation." *Id.* at ¶ 31. The victim of publicly discharging a firearm under R.C. 2923.162 is the public and it is a strict liability offense. (Footnote omitted.) *State v. Hardnett*, 8th Dist. Cuyahoga No. 107038, 2019-Ohio-105, ¶ 4, citing *State v. James*, 2015-Ohio-4987, 53 N.E.3d 770, ¶ 33 (8th Dist.).

{¶ 91} The seventh assignment of error is overruled.

## IV. CONCLUSION

{¶ 92} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence. The defendant's conviction having been affirmed, any bail pending is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, JUDGE

SEAN C. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR